**Laura D. STIGGINS, Plaintiff,**

v.

**Joanne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. 02–CV–6267L.**

United States District Court,
W.D. New York.

July 25, 2003.

Christopher M. Mesh, Connors & Ferris, LLP, Rochester, NY, for Plaintiff.

Brian M. McCarthy, AUSA, U.S. Attorney, Rochester, NY, for Defendant.

*DECISION AND ORDER*

LARIMER, District Judge.

### INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner") that Laura Stiggins ("plaintiff") is not disabled under the Social Security Act ("the Act") and, therefore, is not entitled to disability insurance benefits. As discussed below, the Commissioner's decision is remanded for further administrative proceedings consistent with this decision.

### FACTUAL BACKGROUND

Plaintiff was born on July 14, 1961 and has a high school education. (T. 90).[1] She

---

1. "T. ___" refers to the page of the transcript of the administrative record filed by the Commissioner with her Answer.

also has an Associate of Science Degree in Optical Engineering and vocational training as a licensed practical nurse ("LPN"). (T. 90). Her past relevant work history includes employment as an LPN, a town justice, and a wine taster. (T. 85, 104–7). Plaintiff filed an application for disability insurance benefits on June 23, 2000 (T. 71) which was denied initially (T. 47) and on reconsideration (T. 53). She then requested a hearing and one was held on September 18, 2001 before an Administrative Law Judge ("ALJ") in Rochester, New York. (T. 21–44). Plaintiff is alleging a closed period of disability from October 30, 1999 to December 18, 2000 ("closed period"), due to an arachnoid cyst of the brain, non-epileptic/psychogenic seizures, tremors,[2] and short-term memory loss. (T. 84). The ALJ delivered his decision on November 28, 2001. Plaintiff was found to be not disabled within the meaning of the Act for the closed period (T. 19). This decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on April 6, 2002. (T. 6). Plaintiff commenced this action to review the Commissioner's final decision. The Commissioner and plaintiff now move for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).

## DISCUSSION

### I. Standard for Determining Disability

A person is "disabled" under the Act and therefore entitled to benefits, when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify for benefits,

the disability must be the result of an "anatomical, physiological or psychological abnormalit[y], ... demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Such a disability will be found to exist only if an individual's impairment is "of such severity that [s]he is not only unable to do h[er] previous work, but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

### II. The ALJ's Decision

In determining whether plaintiff was entitled to receive disability benefits, the ALJ proceeded through the required five-step inquiry. *See Draegert v. Barnhart,* 311 F.3d 468, 472 (2d Cir.2002) (discussing five-step process delineated in the relevant regulations); 20 C.F.R. § 404.1520. At the first step of this inquiry, the ALJ found that plaintiff had not engaged in substantial gainful activity during the closed period. (T. 19). Next, the ALJ found that while plaintiff did in fact suffer from atypical seizures/tremors, etiology undetermined, that were severe, she did not have an impairment or combination of impairments listed in or medically equal to one listed in 20 C.F.R. pt. 404, subpt. P, app. 1. (T. 19). The ALJ proceeded to the fourth step and determined that plaintiff did not have the capacity to return to her past relevant work. (T. 19). At the fifth and final stage of this process, the burden shifts to the Commissioner "to prove that the claimant is capable of performing 'any other work.'" *Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir.1998) (quoting *Perez v. Chater,* 77 F.3d 41, 46 (2d Cir.1996)). The ALJ then applied the Medical Vocational Guidelines ("the Grid

2. Plaintiff refers to her tremors as "simple    partial seizures."

Rules") and found that Grid Rule 202.21 directed a finding that plaintiff was capable of performing other types of work. (T. 19). *See* 20 C.F.R. pt. 404, subpt. P, app. 2. Thus, the ALJ found that plaintiff was not disabled during the closed period, as defined under the Act. (T. 19).

## III. Standard of Review

The Commissioner's decision that plaintiff was ineligible to receive benefits must be affirmed if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Veino v. Barnhart,* 312 F.3d 578, 586 (2d Cir.2002); *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842(1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Thus, "[i]t is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir.1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," a court cannot substitute its own judgment for that of the Commissioner. *Veino,* 312 F.3d at 586.

Such a deferential standard, however, is not applied to the Commissioner's conclusions of law. *Townley v. Heckler,* 748 F.2d 109, 113 (2d Cir.1984); *accord Tejada v. Apfel,* 167 F.3d 770, 773 (2d Cir.1999). This Court must independently determine if the Commissioner applied the correct legal standards in determining that the plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Tejada,* 167 F.3d at 773. In its review, this Court must first review the legal standards applied, and

then, if the standards were correctly applied, determine whether the Commissioner's decision is supported by substantial evidence. *Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir.1987).

## IV. Issues on Appeal

### A. Treating Physicians' Opinions

Plaintiff argues that the ALJ erred by failing to properly review and address the opinions of her treating physicians, identified as Drs. Joseph Mancini and Joseph Mann, in accordance with applicable law and the Commissioner's regulations.

The medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2). When the treating source's opinion is not given controlling weight, the ALJ is required to apply certain factors in determining the proper weight that should be accorded the opinion. *Id.* These factors include the length of the treatment relationship, the nature and extent of the relationship, the supportability of the source's opinion, the consistency with other medical evidence in the record, whether the opinion involves the specialty of the physician, and any other factors that might be relevant. *See* 20 C.F.R. § 404.1527(d)(2)-(6).

The law is clear that the ALJ must explain the weight he gives to the opinions of the treating physician. *Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir.1999). "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, even—and perhaps especially—when those dispositions are unfavorable." *Id.* at 134. This is consistent with a plain reading of the regulations, which provide, "We will always give

good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

In the case at bar, the record provides numerous medical statements from Drs. Mancini and Mann regarding plaintiff's condition during the closed period. It is apparent from reading the ALJ's decision however, that he mistakenly assumed that Dr. Mancini and Dr. Mann were one and the same doctor. This is evident in the fact that Dr. Mancini is mentioned no where in the decision despite the fact that he treated plaintiff routinely before, during and after the duration of the closed period.[3] The significance of the ALJ's mistake is illustrated in the following paragraph of the decision conflating their opinions:

> "Dr. Mann indicated the claimant was disabled and unable to perform any duties from October 30, 1999 at least through June 2000. It is significant, however, that on August 2, 2001, Dr. Mann indicated he had not seen claimant since November 1999. This being the case, I do not give his assessment or opinion any weight with regard to the claimant's disability."

It was *Dr. Mancini,* not Dr. Mann, that found that plaintiff was totally disabled from work and could not perform any duties during the relevant time period.[4] Although the second sentence quoted above accurately states that *Dr. Mann* had not seen plaintiff since November of 1999

(T. 264), the ALJ made no reference whatsoever to the fact that Dr. Mancini had seen plaintiff numerous times since November of 1999 and found her to be disabled. The ALJ completely fails to consider and discuss Dr. Mancini's opinions concerning plaintiff's disability. The error is not simply one of mistaken identity because in the next sentence, the ALJ correctly states that Dr. Mann had not seen plaintiff since November of 1999. (T. 264). However, that plaintiff had not seen *Dr. Mann* since 1999 cannot serve as a basis for the ALJ to discount the opinion of *Dr. Mancini* that plaintiff was totally disabled. In light of the ALJ's clear mistake of fact, he does not have a "good reason" to discount Dr. Mancini's opinion regarding plaintiff's condition during the closed period. *See* 20 C.F.R. § 404.1527(d)(2).

More significantly, the ALJ's legal analysis is erroneous since he does not properly evaluate whether the opinions of plaintiff's treating physicians were entitled to controlling weight, or any weight, pursuant to the regulations. *See* 20 C.F.R. 404.1527. Therefore, the case should be remanded to the Commissioner for review to properly consider the opinions of plaintiff's two treating physicians—Dr. Mann and Dr. Mancini. *See Schaal,* 134 F.3d at 504.

### B. Other Issues on Appeal

Plaintiff makes other arguments on appeal regarding the ALJ's credibility determination and his application of the Grid

---

**3.** The plaintiff was treated by Dr. Mancini approximately 28 times from January 1999 to January 2001. Of these, 16 examinations occurred during the relevant closed period.

**4.** The record indicates that Dr. Mancini examined plaintiff in connection with certain unspecified insurance claims. He found that plaintiff was totally disabled due to an arachnoid cyst of the brain and psychogenic/electric seizures as of October of 1999 and con-

tinuing through, at least, June of 2000. (T. 165, 167, 170, 172, 173, 175, 178, 180, 181, 184, 186, 191A, 192, 199, 200, 292, 293, 294, 295, 296). Dr. Mancini characterized plaintiff's disability as continuing "indefinitely" into the future. This opinion is inconsistent with the ALJ's determination that plaintiff could perform light work with certain restrictions.

Rules. I need not resolve these issues on this record because of the remand. This is especially true concerning the ALJ's credibility determinations. *See Martinez v. Massanari,* 242 F.Supp.2d 372, 380 (S.D.N.Y.2003). I note two matters, however, that should be considered on remand. First, the ALJ concludes that plaintiff's impairments did not last for a continuous twelve-month duration. (T. 17). If this were the case, his analysis should have ended at step two with a finding that she was not disabled. *See* 20 C.F.R. § 404.1520(a) ("your impairment(s) must be severe and meet the duration requirement ...."). However, the ALJ continued through the sequential evaluation and found at step three that plaintiff's impairment did not meet or equal the listings (T. 15), and at step four that plaintiff could not return to her past relevant work (T. 18). The ALJ then proceeded to step 5 and determined that plaintiff could perform other work in the national economy at the light level of exertion limited to simple repetitive tasks with seizure precautions. (T. 18).

Finally, I note that application of the Grid Rules in this case may be inappropriate if plaintiff's impairments create solely nonexertional restrictions.[5] *See* 20 C.F.R. pt. 404, subpt. P, app. 2, Sec. 200.00(e).

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. # 10) is denied and the plaintiff's motion for remand (Dkt. # 6) is granted. The case is remanded to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this decision.

IT IS SO ORDERED.

---

**5.** Dr. Mancini refers to plaintiff's impairment as a "psychogenic seizure disorder." Psychogenic is defined as "of mental origin or causation" and "relating to emotional and related psychologic development or to psychogenesis." *Stedman's Medical Dictionary,* 1476 (27th ed.2000). In addition, the ALJ notes that her impairment could have been due to a "chronic conversion disorder." (T. 16). Conversion is defined as "an unconscious defense mechanism by which the anxiety which stems from an unconscious conflict is converted and expressed symbolically as a physical symptom; transformation of an emotion into a physical manifestation, as in c. hysteria." *Stedman's Medical Dictionary,* 406 (27th ed.2000). Seemingly, there may be relevant mental components to this impairment that could constitute nonexertional limitations, thereby making application of the Grid Rules inappropriate.