# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARY BRAY,
                    *Plaintiff-Appellant,*

v.

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,
                    *Defendant-Appellee.*

No. 06-36072

D.C. No.
CV 05-1282 KI

OPINION

Appeal from the United States District Court
for the District of Oregon
Garr M. King, District Judge, Presiding

Argued and Submitted
October 23, 2008—Portland, Oregon

Filed February 6, 2009

Before: A. Wallace Tashima and Milan D. Smith, Jr.,
Circuit Judges, and George H. Wu,* District Judge.

Opinion by Judge Tashima;
Concurrence by Judge Wu

*The Honorable George H. Wu, United States District Judge for the Central District of California, sitting by designation.

1345

## COUNSEL

Betsy Stephens, Albuquerque, New Mexico, for the plaintiff-appellant.

L. Jamala Edwards, Assistant Regional Counsel, Social Security Administration, Seattle, Washington, for the defendant-appellee.

## OPINION

TASHIMA, Circuit Judge:

Mary Bray ("Bray") appeals the district court's judgment affirming the Commissioner of Social Security's ("Commissioner") final decision denying her application for social security disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 401-434, 1381-1383f. Bray contends that the administrative law judge ("ALJ") failed to make findings

concerning whether she possesses "transferable skills" as Social Security Ruling ("SSR") 82-41 expressly requires. Bray also argues that the ALJ erred in discounting her testimony, disregarding a treating physician's medical opinion, and failing to account for her mental impairments in determining her residual functional capacity. Lastly, Bray contends that the ALJ applied the governing Medical Vocational Guidelines "mechanically" in a borderline situation in violation of 20 C.F.R. § 404.1563(b), by including her in the 50-54 age category even though she was less than a month from turning 55 at the time of the ALJ's decision.

We have jurisdiction under 28 U.S.C. § 1291, and we hold that the ALJ erred by failing to make findings on the issue of whether Bray possessed transferable skills. We thus reverse and remand.

## BACKGROUND

On March 25, 2003, Bray filed an application for disability insurance benefits alleging that she had been disabled since November 9, 2001. After her claim was denied initially and on reconsideration, Bray requested a hearing before an ALJ. On November 7, 2003, Bray protectively filed for supplemental social security income payments, and that application was consolidated with her prior claim and expedited to the hearing level.

On March 22, 2005, the date of her hearing, Bray was 54 years old and approximately a month from turning 55. She has a high school education and one year's vocational training as a medical assistant. She suffers from chronic obstructive pulmonary disease ("COPD"), asthma, hypertension, anxiety, depression, and arthritis. Most recently, before filing her application, Bray worked for an ill friend as a part-time caregiver; before that she briefly worked at a call center handling customer service inquiries, but was terminated after three weeks on the job when she requested workplace accommoda-

tions related to her difficulty breathing. Subsequently, she enrolled in a custodial training program, but dropped out of the program after three weeks due to difficulty keeping pace and tolerating exposure to chemical fumes. Bray worked as a grocery clerk from August 2002 to January 2003, as a medical assistant from 1993 to 2001, and as an insurance underwriter from 1986 to 1991. She has been unable to hold a full-time job for more than six months since losing her medical assistant position in 2001; thus, the ALJ determined that she had not engaged in "substantial gainful activity" since the onset date of her alleged disability.[1]

At her hearing, Bray testified that she cannot walk more than half a block without stopping to catch her breath or making use of an inhaler or nebulizer. She also offered a written prescription from a treating physician, issued on May 13, 2004, limiting her to four hours of work per day, five days a week. The physician wrote the prescription after Bray visited the emergency room reporting a flare up of her COPD. A physician with the Oregon Disability Determination Service ("DDS") evaluated Bray's physical condition and concluded that she was capable of standing or walking for six hours out of an eight-hour work day and sitting six hours out of an eight-hour work day.

The ALJ found Bray's testimony regarding her symptoms to be "not entirely credible" due to inconsistencies with record evidence of her daily activities, treatment history, and objective medical condition. The ALJ also discounted the prescription limiting Bray to four hours of work per day, con-

---

[1]As the concurrence notes, the ALJ found that Bray worked as a grocery clerk for less than six months and lost the job "due to her impairments." Concur. op. at 1374. Accordingly, the ALJ deemed Bray's stint as a grocery clerk "an unsuccessful work attempt" that did not amount to "substantial gainful activity." As such, Bray's time as a grocery clerk cannot be considered "past relevant work." *See* 20 C.F.R. § 404.1560(b)(1) (explaining that "past relevant work" must involve "substantial gainful activity").

cluding that the limitation was inconsistent with evidence in Bray's medical record. Relying in large part on the DDS physician's assessment, the ALJ constructed Bray's residual functional capacity ("RFC"), i.e., her ability to work after accounting for her verifiable impairments. The ALJ also determined that Bray's employment history had provided her with "previous skilled work experience." A vocational expert ("VE") testified that a person with Bray's RFC, age, education, and work experience could find work as a general clerk, file clerk, or sales clerk (all "semiskilled" jobs), and that such jobs were available in significant numbers in both the national and regional economies.[2] Relying on the VE's opinion, the ALJ determined that Bray was capable of performing a modified range of light work and found her not disabled.

The Social Security Administration ("SSA") Appeals Council denied Bray's petition for review, making the ALJ's order the final agency order. Bray then commenced this action in the district court, which affirmed the ALJ's order. Bray timely appealed.

## STANDARD OF REVIEW

We review a district court's judgment upholding the denial of social security benefits de novo. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "We may set aside a denial of benefits only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Where the evidence as a whole

---

[2]The VE testified that, although Bray could not return to her past work as a medical assistant or insurance underwriter, she could transition to a job as a general clerk (six-million jobs in the national economy), file clerk (288,000 jobs), or sales clerk (500,000 jobs).

can support either a grant or a denial, we may not substitute our judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (internal quotation marks omitted).

## DISCUSSION

ALJs are to apply a five-step sequential review process in determining whether a claimant qualifies as disabled.[3] *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520, 416.920. The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five. *See Tackett*, 180 F.3d at 1099. If the ALJ determines that a claimant is either disabled or not disabled at any step in the process, the ALJ does not continue on to the next step. *See* 20 C.F.R. § 416.920(a)(4).

The first step is not at issue. Both Bray and the Commissioner agree that Bray is not currently performing substantial gainful work. *See* 20 C.F.R. § 416.920(a)(4)(i). At steps two and three, the ALJ found that Bray's COPD and her depression and anxiety were severe impairments, but that neither corresponded to the listed impairments in the regulations. *See* 20 C.F.R. § 404.1520(d). Bray does not challenge this finding.

Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC. *See* 20 C.F.R. § 416.920(e). Bray contests the ALJ's construction of her RFC. At step four the ALJ must determine whether, in light of the claimant's RFC, she can return to substantial gainful activity performed in the past. 20 C.F.R. § 404.1520(e). The ALJ determined that Bray was not capable of returning to her

---

[3]The Social Security Act defines "disability" as the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

past relevant work as a medical assistant or insurance under-writer, and neither party disputes that finding. At step five, the Commissioner must establish that the claimant is capable of performing substantial gainful work.[4]

The ALJ stated Bray's RFC in this way:

> The claimant has the [RFC] to lift 20 pounds occa-sionally and 10 pounds frequently. She can stand and walk 6 hours out of an 8-hour day and sit 6 hours out of an 8-hour day. She can occasionally climb. She should avoid concentrated exposure to respiratory irritants. She is able to carry out, attend and concen-trate on all but the most detailed and complex tasks.

The ALJ presented the above statement to the VE, who then considered whether an individual burdened with the stated limitations could obtain gainful work in the national econ-omy. The VE testified that Bray could not return to gainful work in her former capacity as a medical assistant or under-writer, but that she had transferable skills and could transition to work as a general clerk, file clerk, or sales clerk. Accord-ingly, the ALJ determined that Bray is not disabled.

---

[4]In making a step five determination, the ALJ may rely on the deci-sional grids listed at 20 C.F.R. Part 404, Subpart P, Appendix 2, or alter-natively, the ALJ can present a hypothetical question that describes the claimant's limitations to a VE. *See Tackett*, 180 F.3d at 1101. The grids are used to determine whether a claimant can transition to substantial gain-ful activity with respect to substantially uniform levels of impairment. *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000). Where the claimant is not capable of performing the entire range of work included in one of the categories on the grids (as in this case), further consideration must be given to types of work that may be precluded. *Tackett*, 180 F.3d at 1101. In such cases, the ALJ may use the grids as a framework, and make a determination of what work the claimant is capable of performing. *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007).

## I.   The ALJ's Failure to Follow SSR 82-41

[1] Relying on SSR 82-41, Bray contends that the ALJ committed reversible error when he assumed that Bray possessed transferable skills without making specific findings in support of that assumption. SSR 82-41 states, in relevant part:

> When the issue of skills and their transferability must be decided, the . . . ALJ is required to make certain findings of fact and include them in the written decision. Findings should be supported with appropriate documentation.
>
> When a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the . . . ALJ's decision . . . . It is important that these findings be made at all levels of adjudication to clearly establish the basis for the determination or decision for the claimant and for a reviewing body including a Federal district court.

SSR 82-41, 1982 WL 31389, at *7. The ALJ found that Bray has "previous skilled work experience," but made no finding as to the transferability of any acquired skills. The decision does not identify the particular skills that Bray possesses, nor does it explain the basis for the determination that she possesses skilled work experience.

At Bray's hearing, the VE testified that Bray's experience as an insurance underwriter — approximately fifteen years prior to the hearing date — had exposed her to computers,[5] customer service, and possibly some data entry, and that her

---

[5]The ALJ made no finding whether any skills Bray acquired by being "exposed to computers" fifteen years ago were still current, much less that they were transferable.

work as a medical assistant may also have exposed her to similar skills. It is impossible to discern whether the VE's brief commentary represents the sole basis for the ALJ's assumption that Bray had transferable skills. The decision is similarly silent on the issue of whether the particular skills that the VE identified would be transferable in Bray's case given her age and medical impairments. *See* SSR 82-41, at *2 ("[A] person has no special advantage if he or she is skilled or semiskilled but can qualify only for an unskilled job because his skills cannot be used to any significant degree in other jobs.").

**[2]** Moreover, the Guidelines state that "[i]n order to find transferability of skills to skilled sedentary work for individuals who are of advanced age (55 and over), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." 20 C.F.R. pt. 404, subpt. P, app. 2 § 201.00(f). The skills that the VE cited at the hearing derived from Bray's work as an insurance underwriter more than fifteen years earlier. Neither the ALJ's decision nor the VE's testimony addresses whether Bray — who was one month from turning 55 at the time of her hearing — would have to undergo more than minimal "vocational adjustment" to perform successfully the tasks required of a file clerk, general clerk, or sales clerk, or otherwise determined whether the skills required of an insurance underwriter are substantially similar to those required of a general, file, or sales clerk.

**[3]** SSRs, according to the governing regulations, "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" of the SSA.[6] 20 C.F.R. § 402.35(b)(1); *see also Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984) (noting the function of SSRs). "SSRs reflect the official interpretation of the [SSA] and are entitled

---

[6]SSRs are published in the Federal Register, although their publication therein is not statutorily compelled. *See* 20 C.F.R. § 402.35(b)(1).

to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) (quoting *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 n.2 (9th Cir. 2005)). SSRs do not carry the "force of law," but they are binding on ALJs nonetheless. *See Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 & n.6 (9th Cir. 1989).

The Commissioner concedes that the ALJ did not follow the express requirements of SSR 82-41, but argues that the SSR is not applicable in this case. Citing a Sixth Circuit opinion for support, the Commissioner argues that SSR 82-41 does not require specific findings when the ALJ relies on the testimony of a VE to determine whether a claimant has transferable skills. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549-50 (6th Cir. 2004). In *Wilson*, the Commissioner argued that SSR 82-41 requires specific findings only when the ALJ relies exclusively on the grids to reach a determination. *See id.* at 549. The court concluded that the Commissioner's reading of SSR 82-41 was entitled to substantial deference and that the proffered interpretation was reasonable. *Id.* at 549-50.

**[4]** For the reasons set forth below, however, we believe the Second Circuit's opinion in *Draegert v. Barnhart*, 311 F.3d 468 (2d Cir. 2002), offers a sounder approach. In *Draegert*, the court held that specific findings on transferable skills are necessary even where the ALJ relies on the testimony of a VE. *See id.* at 475-77; *see also Botefur v. Heckler*, 612 F. Supp. 973, 976-77 (D. Or. 1985) (concluding that specific findings under SSR 82-41 are required when the ALJ relies on a VE's testimony).

In *Auer v. Robbins*, the Supreme Court held that an agency's interpretation of its own regulations, even when the interpretation is adopted as a position in litigation, is entitled to substantial deference. 519 U.S. 452, 462-63 (1997). The *Auer* opinion implies that, in order to receive substantial deference,

an agency's interpretation must represent its "fair and considered judgment," rather than a position that is merely convenient in a given dispute. *See* 519 U.S. at 462 (citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988)); *Bigelow v. Dep't of Def.*, 217 F.3d 875, 878-79 (D.C. Cir. 2000) (Tatel, J., dissenting) (stating that no deference is due "where there is reason to suspect" that an agency's interpretation of its own regulation represents a "convenient litigation position" rather than an expression of the agency's "fair and considered judgment").

Even granting a large measure of interpretive deference, the Commissioner's reading of SSR 82-41 strains credulity. The SSR does not qualify its application, stating only that "[w]hen the issue of skills and their transferability must be decided, the . . . ALJ is *required* to make certain findings of fact and include them in the written decision. Findings should be supported with appropriate documentation." SSR 82-41, 1982 WL 31389, at *7 (emphasis added); *see also Christensen v. Harris County*, 529 U.S. 576, 588 (2000) (holding that no deference is due under *Auer* where the underlying regulation is unambiguous). Further, the SSR states that "[c]onsultation with a [VE] may be necessary to ascertain" whether a given skill or set of skills are transferable in a claimant's particular case. SSR 82-41, 1982 WL 31389, at *4. Thus, the SSR presumes that ALJs will be relying on expert testimony to determine whether a claimant has transferable skills, and it makes little sense to interpret the SSR's provision requiring specific written findings as inapplicable whenever an expert is involved. It is the ALJ, and not the VE, who is responsible for making findings.

According to the district court, the ALJ's assumption that Bray had transferable skills was sufficiently reviewable. Adopting the Sixth Circuit's logic, the district court explained that "in the absence of supplementary testimony from a vocational expert, the ALJ would be obligated to specifically include a finding related to transferable skills" but where the

ALJ relies on an expert, "the source of evidence regarding transferable skills is apparent and reviewable by the court." The district court then concluded that "it was correct for the [VE] to assume that Bray had some degree of computer skill." This is precisely the sort of finding, however, that SSR 82-41 requires the ALJ, and not the court, to make. Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ — not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("[I]n dealing with a determination or judgment which an administrative agency alone is authorized to make, [courts] must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."); *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases . . . .").

**[5]** The ALJ's departure from established SSA procedure thwarts this court's ability to determine whether or not Bray posesses transferable skills — a dispositive issue for her claim. *Cf. Chiappa v. Sec'y of Dep't of Health, Educ. & Welfare*, 497 F. Supp. 356, 358 (S.D.N.Y. 1980) ("The failure of ALJs to make [specific] findings in disability cases is among the principal causes of the delay and uncertainty . . . in this area of the law."). The district court chose to review the transferable skills finding based on what it assumed the ALJ to have determined, but meaningful review of an administrative decision requires access to the facts and reasons supporting that decision. *See Chenery*, 332 U.S. at 196. SSR 82-41 articulates this principle in a clear form. The ALJ erred in disregarding the regulation and the district court erred in disregarding the underlying principle.

**[6]** We thus remand this case to the Commissioner so that the ALJ can further develop the record and make specific findings on whether Bray has transferable skills.[7] *See Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990) (holding that this Court has discretion to remand for further fact finding, if the record is unclear as to a claimant's entitlement to disability benefits).

## II.   The Residual Functional Capacity Determination

The ALJ's non-disability finding flowed from the presentation of a hypothetical RFC to a VE, who then identified specific jobs Bray could perform. Bray contests the representativeness of the ALJ's hypothetical by challenging three predicate findings: 1) that Bray's testimony regarding the severity of her symptoms was not entirely credible; 2) that a treating physician's prescription note was not entirely credible; and 3) that severe, medically determinable mental impairments notwithstanding, Bray is "able to carry out, attend and concentrate on all but the most detailed and complex tasks." We agree with the district court that substantial evidence supports the ALJ's construction of Bray's RFC.

### 1.   Bray's Testimony

The ALJ found that Bray's description of her symptoms was not entirely credible. Specifically, the ALJ discounted Bray's statement that she is incapable of walking more than half a block without stopping to catch her breath and using a nebulizer or inhaler, that she is unable to lift twenty pounds, and that she cannot carry as much as ten pounds "very far." Substantial evidence supports the ALJ's decision to give limited weight to Bray's characterization of her symptoms.

---

[7]The concurrence identifies an additional ground for reversal based on an inconsistency in the ALJ's factual findings. *See* concur. op. at 1374-76. This argument, however, was not made in Bray's opening brief; thus, we deem it waived. *See Rattlesnake Coal. v. U.S. EPA*, 509 F.3d 1095, 1100 (9th Cir. 2007).

**[7]** If an ALJ finds a claimant's characterization of his or her own symptoms unreliable, the ALJ must make a credibility determination backed up by specific findings. *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). "[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate" the claimant's allegations. *Id.* In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

**[8]** The ALJ made specific findings in support of his decision to discount Bray's testimony, noting that: 1) Bray continued to smoke cigarettes up until one month before her hearing, despite complaining of debilitating shortness of breath and acute chemical sensitivity; 2) she leads an active lifestyle, including cleaning, cooking, walking her dogs, and driving to appointments; 3) she recently worked as a personal caregiver for two years, and has sought out other employment since then; 4) she reported to an evaluating physician that she only becomes wheezy when engaging in heavy exertion, and on other occasions reported that her COPD was "going fine"; and 5) Bray's statements at her hearing do not comport with objective evidence in her medical record. The above findings are supported by the record, and belie Bray's claim of debilitating respiratory illness.

**[9]** Bray maintains that it was improper for the ALJ to cite her continued smoking as adversely impacting her credibility. *See Shramek v. Apfel*, 226 F.3d 809, 812-13 (7th Cir. 2000) (noting, in dicta, that nicotine's addictive properties made it "extremely tenuous" to discredit a claimant's description of her impairments based on the claimant's continued smoking). The ALJ reasoned that if Bray's respiratory ailments were as severe as she claimed, she would likely refrain from smoking.

It is certainly possible that Bray was so addicted to cigarettes that she continued smoking even in the face of debilitating shortness of breath and acute chemical sensitivity. Even so, the ALJ presented four other independent bases for discounting Bray's testimony, and each finds ample support in the record. Thus, the ALJ's reliance on Bray's continued smoking, even if erroneous, amounts to harmless error. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (concluding that, even if the record did not support one of the ALJ's stated reasons for disbelieving a claimant's testimony, the error was harmless).

### 2. The Treating Physician

Bray contends that the ALJ erred in elevating contrary evidence above the opinion of a treating physician. At her hearing, Bray introduced a prescription written by Dr. Seyer, limiting her daily work activity to four hours per day, five days a week. In contrast, the DDS physician that evaluated Bray's physical impairments reported that Bray was capable of occasionally lifting twenty pounds, frequently lifting ten pounds, standing or walking for six hours out of an eight-hour work day, and sitting six hours out of an eight-hour work day.

The ALJ gave several reasons for granting Dr. Seyer's prescription note "little weight": 1) the note was written at Bray's specific request; 2) Bray's medical records reveal that she only experiences severe shortness of breath after heavy exertion and not in conjunction with the usual activities of daily living; 3) Dr. Seyer's prescription was written after an exacerbation of her COPD; and 4) Bray did not seek medical treatment again for eight months after Dr. Seyer wrote the prescription, suggesting a lack of need for a continued limitation of her work hours.

A treating physician's opinion is entitled to "substantial weight." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). When evidence in the record contradicts the opinion of a

treating physician, the ALJ must present "specific and legitimate reasons" for discounting the treating physician's opinion, supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).[8] However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

[10] Bray argues that the ALJ's stated reasons are neither legitimate nor sufficient to justify discounting Dr. Seyer's prescription note. Specifically, Bray contends that the fact that Dr. Seyer wrote the note at her request is not a legitimate reason for disbelieving it, because a treating physician would not prescribe medically unwarranted restrictions. As the district court noted, however, the treating physician's prescribed work restrictions were based on Bray's subjective characterization of her symptoms. As the ALJ determined that Bray's description of her limitations was not entirely credible, it is reasonable to discount a physician's prescription that was based on those less than credible statements.

### 3.   *Consideration of Bray's Mental Impairments*

If an ALJ finds a severe impairment at step two, that impairment must be considered in the remaining steps of the sequential analysis. 20 C.F.R. §§ 404.1523, 416.923. The ALJ found that Bray possessed two severe impairments — COPD and an adjustment disorder (i.e., symptoms of anxiety and depression). Bray argues that the ALJ failed to account for her adjustment disorder in the final construction of her RFC, and

---

[8]Where a treating physician's medical opinion is not contradicted by the opinion of another physician, the ALJ must set forth "clear and convincing" reasons for disbelieving the treating physician. *Thomas*, 278 F.3d at 956-57. Here, the report of a DDS physician who examined Bray contradicts the opinion reflected in Dr. Seyer's prescription note; thus, the ALJ need only provide "specific and legitimate" reasons for discounting Dr. Seyer's prescription note. *Lester*, 81 F.3d at 830.

thus ran afoul of the governing regulations. Hypothetical questions posed to a VE must "set out *all* the limitations and restrictions of the particular claimant . . . ." *Russell v. Sullivan*, 930 F.2d 1443, 1445 (9th Cir. 1991). If an ALJ's hypothetical does not reflect all of the claimant's limitations, then "the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir.1991).

The ALJ adequately accounted for Bray's adjustment disorder in his construction of her RFC and in the hypothetical he presented to the VE. He asked the VE to assume that Bray could "carry out, attend [sic] and concentrate on all but the most detailed and complex tasks." Bray argues that this statement contradicts the ALJ's earlier finding at step two that Bray's mental impairments were "severe." She posits that a severe impairment, by definition, inhibits a claimant from engaging in "basic work activities," and the ALJ's statement of her RFC does not capture that limitation. Bray offers no authority to support the proposition that a severe mental impairment must correspond to limitations on a claimant's ability to perform basic work activities.

**[11]** More importantly, the medical record supports the ALJ's conclusions that Bray's mental impairments prevented her from completing only the most complex tasks. In constructing Bray's RFC, the ALJ relied on the opinion of Dr. Krishnan, a psychiatrist who evaluated Bray in August of 2003. Dr. Krishnan concluded that:

> The claimant can accept instructions from supervisors and interact with coworkers and the public. The claimant will be able to perform work activities on a consistent basis without special or additional supervision. The claimant would likely be able to maintain regular attendance in the workplace, as she is currently working. She is able to complete a nor-

mal workday/workweek without interruptions from her psychiatric condition. She also would be able to deal with the usual stress encountered in competitive work.

Bray does not offer evidence to controvert Dr. Krishnan's assessment, and the ALJ's conclusion that Bray can "carry out, attend and concentrate on all but the most detailed and complex tasks" represents a reasonable finding, grounded in the administrative record.

## CONCLUSION

The ALJ assumed that Bray had transferable skills, but failed to articulate a clear basis to support that assumption, contrary to the requirement of SSR 82-41. As a result, this Court cannot properly determine whether substantial evidence supports the ALJ's decision finding Bray not disabled. The issue of transferability of skills is dispositive, as Bray is now 58 years old, and thus should be considered in the "advanced age" category. According to the grids, a 58-year-old with Bray's limitations who lacks transferable skills qualifies as disabled.[9]

---

[9]Because Bray is now 58 years old, the issue of which age category she should be placed in is moot, *i.e.*, her age category is no longer a borderline case (although the ALJ should determine whether Bray became disabled before turning 55). On remand, the ALJ should consider Bray in the 55-60 category for the purpose of determining whether she is disabled. *See Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir 2000) (noting that ALJ adjusted age category determination on remand because claimant's age had advanced); *Brouwers v. Bowen*, 823 F.2d 273, 275 (8th Cir. 1987) (noting that ALJ awarded claimant disability benefits on remand, in part, because the claimant's age had advanced during the proceedings). A claimant over the age of 55, limited to light work (as the ALJ determined Bray to be), and unable to perform past relevant work qualifies as disabled unless the ALJ finds the claimant possesses skills that are "readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity." 20 C.F.R. pt. 404, subpt. P, app. 2 § 202.00(c).

We reverse the judgment of the district court and remand the case with instructions that it further remand this case to the Commissioner for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

---

WU, District Judge, concurring:

I am in agreement with the holdings and reasoning in the Discussion — Part II ("The Residual Functional Capacity Determination") of the Opinion. Likewise, I concur with the result reached in the Discussion — Part I ("The ALJ's Failure to Follow SSR 82-41"), *i.e.*, that the decision below should be reversed and remanded to the Commissioner for further proceedings. However, I arrive at that conclusion by an entirely different approach. The problem here was not fundamentally due to a failure of the ALJ to make a specific finding regarding transferable skills,[1] but to the inconsistent and erroneous findings actually made by the ALJ in his written decision and adopted by the district court.[2]

## I.   ADDITIONAL BACKGROUND

At the March 25, 2005 hearing, the VE's testimony was

---

[1] I concur with the majority in rejecting the holding in *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004), that, under SSR 82-41 (1982 WL 31389 at \*7), that a finding in regards to a claimant's transferable skills is only required "when an ALJ relies solely on the grid, in which cases the ALJ must ascertain whether the claimant has transferable skills in order to apply the grid."

[2] While the majority finds the ALJ's failure to specifically identify Bray's transferable skills to be a sufficient basis for reversing and remanding for further findings, as discussed in this concurrence that failure would not constitute grounds for such reversal *but for* the ALJ's underlying erroneous findings which are delineated herein.

specifically based in part upon the "Dictionary of Occupational Titles" ("DOT").[3] The VE summarized Bray's relevant work history as follows:

> Her most recent [job] was telemarketing, sedentary exertion level. That is defined in the DOT as an SVP three . . . . in my opinion vocationally it goes between a two and a three depending on where you work in the telemarketing field.

> \*    \*    \*    \*

> And her date of employment was March of 2004 for I guess a duration of three weeks. Caregiver, light exertional level, SVP three, semi-skilled, 8 of '02 to some period in 2004. Grocery clerk, meat department, medium exertional level[,] SVP two, unskilled, 8 of '02 to 1 of '03. Medical assistant[,] light exertional level, SVP six, skilled, 3 of 1993 to

---

[3]As noted in *Massachi v. Astrue*, 486 F.3d 1149, 1153 n.8 (9th Cir. 2007), "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." The DOT can be utilized by the ALJ and/or the VE in determining whether a claimant, given his or her residual functional capacity, can perform his or her past relevant work. 20 C.F.R. § 404.1560(b)(2). Likewise, the Social Security Administration ("SSA") classifications of the physical exertion requirements of various jobs as being "sedentary, light, medium, heavy, [or] very heavy" have the same meaning as in the DOT. 20 C.F.R. § 404.1567. In designating the skill requirements of particular occupations as being "unskilled, semi-skilled, [or] skilled," the SSA also uses the materials (such as the DOT) published by the Department of Labor. 20 C.F.R. § 404.1568. The DOT "includes information about jobs (classified by their exertional and skill requirements) that exist in the national economy." 20 C.F.R. § 404.1569. The DOT is considered to be the "best source for how a job is generally performed." *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1166 (9th Cir. 2008) (quoting *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001)). "The DOT creates a rebuttable presumption as to the job classification." *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008).

11 of '01. Underwriter, sedentary exertional level[,] SVP seven, skilled, 8 of '86 through 10 of 1991.[4]

In response to the ALJ's hypothetical which included Bray's age at onset of disability, education, work experience, residual functional capacity, and ability to "attend and concentrate on all but the most detailed and complex tasks," the VE indicated:

> That individual could perform the care giving job or what they call companion. This individual would be able to perform telemarketing types of work. I do not believe this person with a limitation on the detail you mentioned could handle the underwriter or the medical assistant. And by the way, medical assistant, that many times is at the medium exertional level . . . .

As to the underwriter and medical assistant jobs, the VE opined that:

---

[4]"SVP" refers to the "specific vocational preparation" level which is defined in the DOT as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Dictionary of Occupational Titles*, Appendix C, page 1009 (4th ed. 1991). SVP 2 means "anything beyond a short demonstration up to and including 1 month;" SVP 3 means "over 1 month up to and including 3 months;" SVP 6 means "over 1 year up to and including 2 years" and SVP 7 means "over 2 years up to and including 4 years." *Id.*

As stated in SSR 00-4p, 2000 WL 1898704 at *3:

> The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 C.F.R. 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT. Although there may be a reason for classifying an occupation's skill level differently than in the DOT, the regulatory definitions of skill levels are controlling.

There are skills transferable in relationship to office clerical responsibility. In our underwriting job even as a medical assistant, she was exposed to computers, filing, typing, *customer service*, possibly some data entry, those kinds of skills. [Emphasis added.]

Ultimately, the VE concluded that Bray could work as a general clerk, file clerk or sales clerk, and there was available employment in those fields.[5]

The ALJ found that Bray "has the residual functional capacity to perform a significant range of light work . . . ." He noted that:

The vocational expert testified that given the claimant's residual functional capacity, she is incapable of performing her past relevant work as a grocery clerk, medical assistant and insurance underwriter. She would be capable of performing her past work as a telemarketer and caregiver. However, these jobs were not performed at the substantial gainful activity level and thus are not considered past relevant work. The claimant is incapable of returning to her past relevant work.[6]

The ALJ ultimately decided that:

Based on the credible testimony of the vocational expert, the undersigned concludes that considering the claimant's age, educational background, work

---

[5]At the hearing, Bray testified that in February/March of 2004, she was seeking employment involving "customer service, office work, medical office receptionist, scheduler, phones."

[6]Contrary to the ALJ's finding, the VE never expressly stated that Bray was incapable of performing her past relevant work as a grocery clerk. The ALJ may have assumed that conclusion because of the VE's testimony that the grocery clerk job required a "medium" exertional level. However, as discussed below, that testimony was erroneous.

experience and residual functional capacity, she is capable of making a successful adjustment to work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore reached within the framework of Medical-Vocational Rule 202.15.[7]

---

[7]"Medical-Vocational Rule ___" is a reference to one of the rules/categories found in the tables in 20 C.F.R. Part 404, Subpart P, Appendix 2, which indicates "whether an individual is or is not disabled" based on the person's age, education, residual functional capacity and previous work experience. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00. The tables with their concomitant rules/categories are sometimes referenced as "the grids."

As to the use of the grids, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006), cautions that:

[T]he grids are predicated on a claimant suffering from an impairment which manifests itself by limitations in meeting the strength requirements of jobs ("exertional limitations"); they may not be fully applicable where the nature of a claimant's impairment does not result in such limitations ("non-exertional limitations"). 20 C.F.R. Part 404, Subpart P, Appx. 2 § 200.00(e) [citation omitted]. The reason for this limitation on the grids' application is that, despite having the residual functional capacity to perform a full range of unskilled occupations at a given exertional level, a claimant may not be able to adjust to these jobs because of non-exertional limitations. Soc. Sec. Rul. 83-10 (January 1983). In particular, non-exertional impairments — including postural and manipulative limitations such as difficulty reaching, handling, stooping, climbing, crawling, or crouching — may, if sufficiently severe, limit a claimant's functional capacity in ways not contemplated by the grids. 20 C.F.R. § 404.1569 [citation omitted]. Thus, the *Tackett* court held that "[t]he grids should be applied only where a claimant's functional limitations fall into a standardized pattern 'accurately and completely' described by the grids." [*Tackett v. Apfel*, 180 F.3d 1094, 1103 (9th Cir. 1999).]

## II.  DISCUSSION

### A.  Applicable Law

The concept of transferability of skills is delineated in 20 C.F.R. § 404.1568(d) as follows:

> (1) . . . . We [the SSA] consider you [the claimant] to have skills that can be used in other jobs, when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs.

> (2) . . . . Transferability is most probable and meaningful among jobs in which -

>> (i) The same or a lesser degree of skill is required;

>> (ii) The same or similar tools and machines are used; and

>> (iii) The same or similar raw materials, products, processes, or services are involved.

> (3) . . . . There are degrees of transferability of skills ranging from very close similarities to remote and incidental similarities among jobs. A complete similarity of all three factors is not necessary for transferability.

> \*   \*   \*   \*

> (4) . . . . If you are of advanced age (age 55 or older), and you have a severe impairment(s) that lim-

its you to *sedentary* or *light work,* we will find that you cannot make an adjustment to other work unless you have skills that you can transfer to other skilled or semiskilled work . . . that you can do despite your impairment(s).

SSR 82-41 states that "[w]hen the issue of skills and their transferability must be decided," the "ALJ is required to make certain findings of fact and include them in the written decision." 1982 WL 31389 at *7; *see also Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Also, "[w]hen a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the . . . ALJ's decision." 1982 WL 31389 at *7. However, SSR 82-41 additionally indicates that:

> Transferability of skills is an issue only when an individual's impairment(s), though severe, does not meet or equal the criteria in the Listing of Impairments in Appendix 1 of the regulations [20 C.F.R. Pt. 404, Subpt. P, App. 1] but does prevent the performance of past relevant work (PRW), and that work has been determined to be skilled or semi-skilled. (PRW is defined in regulations sections 404.1565 and 416.965.) When the table rules in Appendix 2 [20 C.F.R. Pt. 404, Subpt. P, App. 2] are applicable to a case, transferability will be decisive in the conclusion of "disabled" or "not disabled" in only a relatively few instances because, even if it is determined that there are no transferable skills, a finding of "not disabled" may be based on the ability to do unskilled work.

*Id.* at *1. Further, SSR 82-41 recognizes that on occasion, in situations involving similar types of jobs, certain skills may be readily transferable.

. . . where job skills have universal applicability across industry lines, e.g., clerical, professional, administrative, or managerial types of jobs, transferability of skills to industries differing from past work experience can usually be accomplished with very little, if any, vocational adjustment where jobs with similar skills can be identified as being within an individual's RFC [residual functional capacity].

*Id.* at *6.[8]

SSR 00-4p states that the SSA relies "primarily on the DOT (including its companion publication the SCO [the Revised Dictionary of Occupational Titles]) for information about the requirements of work in the national economy. We use these publications at Steps 4 and 5 of the sequential evaluation process." 2000 WL 1898704 at *2. The occupational evidence provided by a VE should generally be consistent with the occupational information supplied by the DOT. *Id.* When there is a conflict between the VE evidence and the DOT, it is a duty of the ALJ to inquire on the record as to the reason for the inconsistency before relying on the VE's evidence. *Id.*

## B.  Analysis

The VE's testimony (that Bray's prior job as a "grocery clerk, meat department" had a physical exertion level of "medium" and an SVP level of "two, unskilled") is contrary to

---

[8]An example given in SSR 82-41 is:

[A] semiskilled general office clerk (administrative clerk), doing light work, ordinarily is equally proficient in, and spends considerable time doing, typing, filing, tabulating and posting data in record books, preparing invoices and statements, operating adding and calculating machines, etc. These clerical skills may be readily transferable to such semiskilled sedentary occupations as typist, clerk-typist and insurance auditing control clerk.

1982 WL 31389 at *3.

both the DOT classification and the only evidence on the topic in the administrative record. The DOT lists the strength rating for the occupation of a "sales clerk, food (retail trade)" as "L" or "light" and an SVP level of "3" or "semi-skilled."[9] *Dictionary of Occupational Titles* § 290.477-018 (4th ed. 1991). The DOT notes that the "sales clerk, food (retail trade)" job classification also covers "grocery clerk (retail trade)" and "meat counter clerk (retail trade)." *Id.* In the "Work History Report" which she filled out and submitted to the SSA in April of 2003, Bray described her grocery clerk job as requiring her to occasionally lift 20 lbs, to frequently lift 10 lbs and to stand and/or walk up to 8 hours. Her description of that job places it within the "light work" category. *See* 20 C.F.R. § 404.1567(b).

Because the VE's testimony as to the requirements of the grocery clerk position was in conflict with the DOT's specifications, the ALJ had "an affirmative responsibility" to inquire as to the reasons and evidentiary basis for the VE's deviation. *See* SSR 00-4p, 2000 WL 1898704 at *2; *Tommasetti*, 533 F.3d at 1042; *Massachi*, 486 F.3d at 1153. The ALJ did not make any such inquiry, which constitutes error.

The ALJ in his conclusion stated that "given the claimant's

---

[9]The *Dictionary of Occupational Titles*, Appendix C, page 1013 (4th ed. 1991), states that "L-Light work" indicates a capacity for:

> Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

residual functional capacity, she is incapable of performing her past relevant work as a grocery clerk, medical assistant and insurance underwriter." First, it is noted that in the beginning of his decision, the ALJ wrote that:

> After the date of alleged onset of disability, the claimant worked as a grocery clerk. The work was performed during a temporary period of remissions from symptoms and ended after less than 6 months due to her impairments. This job is considered an unsuccessful work attempt.

It is questionable whether the grocery clerk job, if it had been correctly characterized as an "unsuccessful work attempt," could later be considered part of Bray's past relevant work.[10] However, assuming *arguendo* that it can be, the ALJ's conclusion - that Bray's residual functional capacity (which the ALJ later found allowed her to do "light work" in the general, file or sales clerk occupations) barred her from performing her past work as a grocery clerk — is based upon the VE's erroneous testimony that the grocery clerk job requires "medium" physical exertion requirements.[11]

In addition, the ALJ's conclusion — that Bray was incapable of performing her past work as a grocery clerk and yet that she could perform work as a sales clerk — is on its face inconsistent. The duties of a grocery clerk/sales clerk, food (retail trade) are described in the *Dictionary of Occupational Titles* § 290.477-018 (4th ed. 1991) as follows:

---

[10]20 C.F.R. § 404.1560(b)(1) defines "past relevant work" as "work that you [the claimant] have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it."

[11]If the grocery clerk job is held to be part of Bray's past relevant work and if her residual functional capacity (when correctly evaluated) would allow her to perform that past occupation, then she could be found "not disabled" at step four of the five step evaluation of disability analysis. *See* 20 C.F.R. § 404.1520(a)(4)(iv).

Obtains or prepares food items requested by customers in retail food store, totals customer bill, receives payment, and makes change: fills customer order, performing duties such as obtaining items from shelves, freezers, coolers, bins, tables, or containers; cleaning poultry; scaling and trimming fish; slicing meat or cheese, using slicing machine; preparing take-out sandwiches and salads; dispensing beverages; and warming food items in oven. Weighs items, such as produce, meat, and poultry to determine price. Lists and totals prices, using paper and pencil, calculator, or cash register. Informs customer of total price of purchases. Receives payment from customer for purchases and makes change. Bags or wraps purchases for customer. Cleans shelves, bins, tables, and coolers. Stamps, marks, or tags price on merchandise. Sets up displays and stocks shelves, coolers, counter, bins, tables, freezers, containers, or trays with new merchandise. May make deliveries to customer home or place of business . . . . May write orders, decorate cakes, or describe available specialty products, such as birthday cakes. May order merchandise from warehouse or supplier. May be designated according to type of food sold as Grocery Clerk (retail trade); Meat Counter clerk (retail trade); Produce Clerk (retail trade) I; Sales Clerk, Fish (retail trade).

The duties of a sales clerk (retail trade) are substantially the same as those of a grocery clerk/sales clerk, food (retail trade) and are delineated in Section 290.477-014 as:

Obtains or receives merchandise, totals bill, accepts payment, and makes change for customers in retail store such as tobacco shop, drug store, candy store, or liquor store: Stocks shelves, counters, or tables with merchandise. Sets up advertising displays or arranges merchandise on counters or tables to pro-

mote sales. Stamps, marks, or tags price on merchandise. Obtains merchandise requested by customer or receives merchandise selected by customer. Answers customer's questions concerning location, price, and use of merchandise. Totals price and tax on merchandise purchase by customer, using paper and pencil, cash register, or calculator, to determine bill. Accepts payment and makes change. Wraps or bags merchandise for customers. Cleans shelves, counters, or tables. Removes and records amount of cash in register at end of shift. May calculate sales discount to determine price. May keep record of sales, prepare inventory of stock, or order merchandise. May be designated according to produce sold or type of store.

A finding (without any explanation or reasoning) that Bray could do the work required of a sales clerk but not the job of a grocery clerk is in error.

Finally, as to the issue of transferability of skills, the ALJ placed Bray in Rule 202.15 of the grids and found her to be "not disabled." 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 2. Rule 202.15 covers claimants who are "closely approaching advanced age," 20 C.F.R. § 404.1563(d) (age 50-54), who are at a minimum high school graduates, and who have had past skilled or semi-skilled jobs where their skills are transferable. Under SSR 82-41, by placing Bray in a rule/category of the grids which contains a requirement of transferable skills, the ALJ should have made a finding identifying the work skills involved and the occupations to which they applied. The ALJ did not do so here, which constitutes error. However, that omission was not significant at that time or the source of reversible error. Even if one were to conclude that the ALJ's failure to identify the transferable skills should be treated as if Bray had no transferrable skills, Bray would then fall within Rule 202.14 of the grids which would still place her in the "not disabled" category. *See* 20 C.F.R. Pt. 404, Subpt. P, App.

2, Table No. 2. Consequently, the fundamental problem here was not the ALJ's failure to identify the transferable skills but rather whether placement of Bray into Rule 202.15 (or for that matter into Rules 202.13 or 202.14) was correct.[12] This issue concerns whether the ALJ properly considered the requirements of 20 C.F.R. § 404.1563(b) and 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(c) and (d).[13] However, in light of footnote 9 of the majority's opinion, the ALJ's placement of Bray into Rule 202.15 becomes moot and the issue of transferability of skills is moved from the backburner to the front.[14]

---

[12]In addition, because the VE erroneously categorized Bray's prior grocery clerk job as being "unskilled" (which the ALJ accepted), the ALJ could not find that Bray had acquired any transferable skills from that occupation because "[a] person does not gain work skills by doing unskilled jobs." 20 C.F.R. § 404.1568(a). However, because the DOT classifies the grocery clerk job as being "semi-skilled," Bray could be found to have obtained transferable skills while employed in that occupation. Although the ALJ characterized Bray's five plus months of grocery clerk employment as an "unsuccessful work attempt," the DOT treats that position as having an SVP of 3, which means that a typical worker could "learn the techniques . . . and develop the facility needed for average performance" in that job after one to three months.

[13]In the grids, where a claimant is found to have a residual functional capacity which is limited to light work, the treatment of persons who are "closely approaching advanced age" (*i.e.* 50 to 54) differs greatly from those who are of "advanced age" (*i.e.* 55 or over). The former will generally not be considered to be disabled when they cannot return to their past relevant work unless they are illiterate and have had only unskilled or no previous work experience. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 2, Rules 202.09 through 202.15. Therefore, transferability of skills is not particularly relevant to that category of claimants. However, for individuals who are of advanced age and limited to light work, they will generally be considered to be disabled when they cannot return to their past relevant work unless they have transferable skills or some education which provides for direct entry into skilled work. *Id.* at Rules 202.01 through 202.08. Thus, the decision as to whether to treat Bray as a person who is closely approaching advanced age rather than a person of advanced age was of paramount importance. 20 C.F.R. § 404.1563(b) provides that the age categories are not to be applied "mechanically in a borderline situation."

[14]As noted by the SSA when it amended 20 C.F.R. § 404.1563(b):

The new paragraph explains that, if a person's age category

## III. CONCLUSION

For the reasons stated above, I concur that the decision of the district court should be reversed and the case remanded to the Commissioner for further proceedings.

---

changes during the period for which we are adjudicating a disability claim, we will use each of the age categories that is applicable to the person during the period for which we are deciding if the person is disabled.

65 Fed. Reg. 17994, 17995 (April 6, 2000).