FILED

JUN 17 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MANDI CALKINS,

              Plaintiff-Appellant,

          v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

              Defendant-Appellee.

No. 08-35927

D. C. No. CV-07-6146-BR

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Submitted November 6, 2009[**]
Portland, Oregon

Before: FISHER and PAEZ, Circuit Judges, and FOGEL, District Judge[***]

Mandi Calkins ("Calkins") appeals from the district court's judgment

affirming the final decision of the Commissioner of Social Security denying

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Jeremy Fogel, United States District Judge for the Northern District of California, sitting by designation.

Calkins's application for disability insurance benefits under Title II of the Social Security Act. Calkins contends that the Administrative Law Judge ("ALJ") erred in discounting her subjective complaints and in evaluating the medical evidence. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we review de novo the district court's decision upholding the denial of benefits. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). A decision to deny benefits will be disturbed only if it is not supported by substantial evidence or if it rests on legal error. *Id.* We affirm.

First, the ALJ provided "specific, cogent reasons" for discounting Calkins's subjective complaints of pain and other symptoms. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). The ALJ discussed thoroughly the medical and other documentary evidence in the record, Calkins's history of substance abuse, specific conflicts in Calkins's statements to doctors, and contradictions between Calkins's testimony regarding her daily life activities and the statements of Calkins's daughter and mother. This evidence is sufficient to support the ALJ's determination that Calkins's subjective reporting was not credible. *See Bray*, 554 F.3d at 1227 ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors.").

2

Second, substantial evidence supports the ALJ's determination that Calkins retains the residual functional capacity to do a limited range of light work. The ALJ provided "specific and legitimate reasons," supported by substantial evidence, for rejecting Dr. Kosek's controverted opinion that Calkins is restricted to part-time sedentary work and for failing to credit the controverted opinion of Dr. Shellman regarding Calkins's mental impairments. *See Bray*, 554 F.3d at 1228 (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)); *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Although Dr. Shellman performed a clinical examination of and administered psychological testing to Calkins, it appears that in formulating his opinions he relied to a very significant extent upon Calkins's subjective reporting. Dr. Shellman diagnosed Calkins with "[m]ajor depressive disorder, recurrent, severe with psychotic features"; "[p]ost-traumatic stress disorder, chronic"; "[a]lcohol abuse"; and "[s]edative, hypnotic, or angiolytic abuse." It is unlikely that such diagnoses could be based primarily upon the relatively superficial testing Dr. Shellman administered during the single hour he spent with Calkins. In fact, Dr. Shellman's report makes clear that he relied upon Calkins's self-reporting, stating that "[g]iven *her history*, I should consider her depression and post-traumatic stress disorder to be primary and her problems with substance abuse the

3

concomitance of the first two diagnoses." (emphasis added). The only medical records Dr. Shellman reviewed were hospital records from May and June 2003; the rest of Calkins's medical history was obtained from Calkins herself. In light of the ALJ's determination that Calkins's subjective reporting was not credible, the ALJ permissibly discounted Dr. Shellman's findings. *See Bray*, 554 F.3d at 1228 ("As the ALJ determined that Bray's description of her limitations was not entirely credible, it is reasonable to discount a physician's prescription that was based on those less than credible statements.").

The dissent asserts that Dr. Shellman's opinion is materially indistinguishable from the medical opinion that the agency was required to credit in *Ryan* and accordingly that remand is appropriate in this case. While the two medical opinions are similar in many respects, the ALJ in the instant case relied explicitly upon substantial objective evidence of Calkins's lack of credibility as a basis for rejecting Dr. Shellman's opinion. *Ryan* did not address the extent to which an ALJ may consider such evidence when determining what weight to accord a medical opinion. Under *Bray,* an ALJ properly may discount a physician's opinion that is based solely upon a claimant's self-reporting if the ALJ concludes that the claimant's self-reporting is not credible. *Bray*, 554 F.3d at 1228. Following the same rationale, an ALJ must be permitted to discount an

4

opinion based principally upon a claimant's self-reporting if the record contains objective evidence that the self-reporting is not credible.

The dissent maintains that as long as a physician expresses no doubts about the claimant's credibility and makes at least some clinical findings consistent with the diagnosis, the ALJ must credit the physician's opinion. There are many situations in which applying *Ryan* in this way could lead to a problematic result. For example, suppose a physician had diagnosed a claimant with severe depression based primarily upon a self-reported history of suicide attempts. Suppose further that the record contained objective evidence, not available to the physician, that the claimant never had attempted suicide but had a history of lying to her doctors. Following the dissent's view of *Ryan*, an ALJ would be required to credit the diagnosis of depression as long as the *physician* believed the claimant and made at least some independent clinical findings, even if it were apparent to the ALJ that the physician's belief was based largely upon "facts" that turned out to be untrue. While it is not the role of an ALJ to second-guess physicians, ALJs must be able to consider medical opinions in the context of the record as a whole.

Finally, there is no merit to Calkins's claim that the ALJ failed to consider a limitation on reaching indicated by Drs. Eder and Westfall, whose reports indicate only that Calkins is limited to occasional overhead reaching bilaterally.

5

**AFFIRMED.**

*Calkins v. Astrue*, No. 08-35927

PAEZ, Circuit Judge, dissenting:

Although I agree with the court's conclusions that the ALJ properly discounted Calkins's subjective complaints and Dr. Kosek's opinion, and that the ALJ did not fail to consider the reports by Drs. Eder and Westfall, I respectfully dissent because I believe that the ALJ improperly discounted Dr. Shellman's medical opinion.

In *Ryan v. Commissioner of Social Security*, we held that an ALJ's own doubts about a claimant's credibility do not justify rejecting an examining physician's opinion that is based in part on the claimant's subjective complaints "where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." 528 F.3d 1194, 1199–1200 (9th Cir. 2008). Because the medical opinion that the court required the agency to credit in *Ryan* is materially indistinguishable from Dr. Shellman's report here, I believe *Ryan* requires that we remand this case to the agency for further proceedings.

Like the examining psychiatrist in *Ryan*, Dr. Shellman expressed no doubts about Calkins's credibility. *Id.* at 1200. Moreover, Dr. Shellman supported his ultimate opinions with his own independent clinical observations to the same extent as the doctor in *Ryan*. Whereas the examining physician in *Ryan*

1

commented on the claimant's "rapid speech," *id.* at 1999, Dr. Shellman noted that

Calkins's speech was "very soft and retarded in pace." Whereas the physician in

*Ryan* noted that the claimant was "easily agitated and appears to be very angry,"

*id.*, Dr. Shellman recorded Calkins's "quite depressed" mood. Whereas the

physician in *Ryan* reported that the claimant's affect was "anxious, distraught,

nervous, shaky, and edgy," *id.*, Dr. Shellman reported that Calkins's "affect was

flat," that she would "break into tears," and that "[t]hroughout the evaluation,

questions had to be repeated several times." Whereas the physician in *Ryan*

commented on the claimant's "odd" behavior and mannerisms, *id.*, Dr. Shellman

commented that Calkins's "presentation and demeanor were consistent with her

allegations and the records reviewed." In light of these similarities, I see no basis

to treat Dr. Shellman's opinion differently from the psychiatrist's opinion that we

required the agency to credit in *Ryan*.

Contrary to the majority's assertion, *Ryan* is not distinguishable on the

ground that the ALJ in that case may not have pointed to substantial objective

evidence of that claimant's lack of credibility. *Ryan* did not base its holding in any

way on a lack of substantial evidence supporting the ALJ's adverse credibility

determination. Indeed, if the sufficiency of the ALJ's basis for discrediting the

claimant's complaints mattered, we could not have granted relief without first

2

determining that the ALJ erred in discrediting the claimant's subjective complaints. But we did not. The fact that *Ryan* neither assesses the ALJ's reasons for discrediting the claimant's subjective reporting nor states that the ALJ failed to provide any such reasons demonstrates that this evidence was utterly irrelevant to our determination. Thus, the fairest reading of *Ryan* is that an ALJ's own doubt about a claimant's credibility, *whether supported by substantial evidence or not*, cannot constitute a "clear and convincing" or "specific and legitimate" reason to discount an examining physician's opinion where the physician expresses no doubt about the claimant's complaints and supports his conclusions with his own observations. *See id.* at 1199–1200. The majority does not even attempt to challenge this understanding of *Ryan*, but rather simply ignores it in its mission to distinguish this clearly controlling authority.

Indeed, the majority makes little effort to distinguish *Ryan*, and its reasoning reflects little more than a disagreement with *Ryan*'s holding that doubts about a claimant's credibility do not justify rejecting an examining physician's opinion "where the doctor does not discredit [the claimant's] complaints and supports his ultimate opinion with his own observations." *Ryan*, 528 F.3d at 1199–1200. But disagreement with that holding does not give us license to disregard it.

First, the majority reveals its disagreement with *Ryan* by seeking to expand

3

*Bray*'s rationale in a way that *Ryan* forecloses. In *Bray*, we held that the ALJ properly discounted a physician's opinion where the opinion apparently was based *only* on the claimant's subjective reporting, which the ALJ had properly discounted. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (explaining that the "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings" before affirming the ALJ's decision to discredit a physician's note prescribing "work restrictions [that] were based on [the claimant's] subjective characterization of her symptoms" (internal quotations and citation omitted)). Contrary to the majority's suggestion, it does not follow from *Bray*'s rationale that an ALJ's supported adverse credibility determination can likewise justify discounting a physician's opinion that is in part based on the physician's own clinical observations, rather than solely on the claimant's self-reporting. *Ryan* forecloses such a holding, and for good reason: doubts about a claimant's credibility, no matter how well supported, cannot taint a physician's own clinical observations, and the ALJ must therefore provide "specific and legitimate" or "clear and convincing" reasons to discredit the physician's observations, and the resulting diagnosis.

Second, the majority criticizes the "problematic result[s]" that will follow

4

from "the dissent's view of *Ryan*." Maj. Memo. at 5. But I do not offer a novel view of *Ryan*, but rather simply propose applying its unequivocally stated rule: "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan*, 528 F.3d at 1199–1200. Because Dr. Shellman supported his ultimate opinion with his own observations *to the same extent* as the doctor in *Ryan*, I believe we are bound to follow *Ryan* here. Thus, it is that controlling authority that dictates the results that the majority finds "problematic." Further, I do not find it particularly "problematic" to prohibit an ALJ from discrediting a physician's independent clinical findings without providing independent reasons for doing so.

Following *Ryan*, I would conclude that the ALJ erred in discounting Dr. Shellman's expert opinion and accordingly reverse in part and remand for further consideration at steps 4 and 5 of the sequential disability analysis.