NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

KATRINA DITTO,

          Plaintiff - Appellant,

  v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

          Defendant - Appellee.

No. 10-35005

D.C. No. 3:08-cv-01016-BR

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Submitted October 8, 2010[**]
Portland, Oregon

Before: TASHIMA, PAEZ and CLIFTON, Circuit Judges.

    Katrina Ditto ("Ditto") appeals the district court's judgment that affirmed a

final decision by the Commissioner of Social Security denying Ditto's application

for disability insurance benefits under Title II of the Social Security Act. We have

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

    [**]    The panel unanimously concludes this case is suitable for decision
without oral argument. See Fed. R. App. P. 34(a)(2).

jurisdiction pursuant to 28 U.S.C. § 1291, and we review de novo the district court's decision upholding the denial of benefits. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). We affirm.

First, Ditto contends that the ALJ's step-two determination excluding diplopia as a severe impairment is not supported by substantial evidence. We have defined the step-two inquiry as "a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The record clearly reveals that Ditto suffers from only "mild diplopia," as diagnosed by Drs. Syna and Schloesser. Ditto's medical record, testimony and lay witness evidence supported the ALJ's finding that her diplopia impairment was insufficient to pass the de minimis threshold of step two. Accordingly, substantial evidence supports the ALJ's finding that Ditto's diplopia was not severe.

Second, the ALJ provided "specific, cogent reasons" for discounting Ditto's subjective complaints of pain and other symptoms. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). The ALJ thoroughly discussed the medical and other documentary evidence in the record and noted contradictions between Ditto's testimony regarding her daily life activities and the statements of Ditto's husband. This evidence was sufficient to support the ALJ's determination that Ditto's subjective reporting was not entirely credible. *See Bray*, 554 F.3d at 1227 ("In

2

reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors.").

Third, Ditto contends that the ALJ erred in discrediting the testimony of her lay witnesses. The ALJ provided germane reasons for giving the lay witness testimony limited weight, noting inconsistencies in Ditto's husband's statements regarding his wife's level of functioning. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Further, the ALJ noted medical evidence and other documentary evidence, including treatment notes that described Ditto's daily activities, and determined that Ditto's mother's statements conflicted with the medical evidence. *See Lewis*, 236 F.3d at 511 ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."). Accordingly, the ALJ did not err in discrediting Ditto's lay witness testimony.

Fourth, the ALJ did not fail to develop the record. The ALJ's duty to supplement the administrative record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Upon review of the record, the ALJ found that it was more than adequate to make an assessment of the severity of Ditto's

3

myasthenia gravis.  Having reviewed the record, we agree with the ALJ's determination.  Therefore, the record was not ambiguous or inadequate to trigger the ALJ's duty to further develop the record.

Fifth, Ditto argues that the ALJ erred by propounding a vocational hypothetical that conflicted with the residual functional capacity  ("RFC") determination.  In the RFC, the ALJ determined that Ditto's diplopia excluded tasks "requiring fine vision, more than occasional . . . upward gazing."[1]  In the hypothetical, the ALJ stated "[t]here should be only occasional upward gaze, and if there is, there should be no fine vision."  Ditto contends that the RFC excluded any task requiring fine vision, but the hypothetical excluded only tasks requiring *both* upward gaze and fine vision.  We do not agree that is the natural and reasonable reading of the RFC.  Although the RFC could have been better worded, we fairly construe it to exclude only excessive upward gazing, not fine vision in general.  This construction is supported by an earlier passage in which the ALJ stated:  "The medical treatment record indicated the claimant experiences . . . double vision when she performs one activity.  Specifically, when the claimant gazes upward, she

---

[1]The entire RFC states:  "The claimant had the residual functional capacity to perform sedentary to light work which accommodates her fatigue, with the following modifications: precluded from tasks requiring fine vision, more than occasional 1/3 of a work day upward gazing; limit climbing stairs to occasional; avoid climbing ladders, ropes, and scaffolds."

has this symptom . . . . [But] [t]here is no credible evidence that she has this problem on a chronic or frequent basis outside of looking upward." Thus, when the RFC is properly construed, the hypothetical does not conflict with the RFC. We conclude that the hypothetical was proper.

**AFFIRMED.**