Kevin GREEK, Plaintiff,

v.

Carolyn W. COLVIN, Acting Commissioner of Social Security, Defendant.

No. 12–CV–6454 EAW.

United States District Court, W.D. New York.

Signed Aug. 14, 2014.

Mark M. McDonald, Bond and Mc-Donald, Geneva, NY, for Plaintiff.

Kathryn L. Smith, U.S. Attorney's Office, Rochester, NY, for Defendant.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

### I. INTRODUCTION

Plaintiff Kevin Greek ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"),[1] denying Plaintiff's application for Social Security Disability ("SSD") and Supplemental Security Income ("SSI") benefits. (Dkt. 1). Plaintiff alleges that the decision of Administrative Law Judge ("ALJ") Joseph Grow was not supported by substantial evidence in the record and was based on erroneous legal standards.

Presently before the Court are the parties' opposing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 4, 5). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with the applicable legal standards. Accordingly, the Commissioner's motion for judgment on the pleadings (Dkt. 4) is granted, and Plaintiffs motion (Dkt. 5) is denied. Plaintiffs complaint is dismissed with prejudice.

### II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

#### A. Overview

On August 4, 2009, Plaintiff protectively filed a Title II application for SSD, and on

---

1. Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. As such, the Court hereby amends the caption of the case *sua sponte* to reflect that Ms. Colvin is the Defendant.

August 11, 2009, filed an application for SSI, alleging a disability beginning June 19, 2009. (Tr. 198–209). Plaintiff claimed the disability of diabetes mellitus, type I, with secondary effects of memory loss and altered mental state. (Tr. 30–31). On October 24, 2009, the Commissioner denied Plaintiff's application. (Tr. 131). Plaintiff timely filed a request for a hearing before an ALJ on December 9, 2009. (Tr. 135).

On September 27, 2010, Plaintiff, represented by counsel, testified at a video hearing before ALJ Joseph Grow. (Tr. 99–125). Vocational Expert ("VE") Victor G. Alberigi also testified. (Tr. 182–83). On October 8, 2010, the ALJ issued a finding that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 13–23).

Plaintiff timely filed a request for review of the ALJ's decision by the Appeals Council on November 12, 2010. (Tr. 5–7). On July 17, 2012, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–4). On August 23, 2012, Plaintiff filed this civil action appealing the final decision of the Commissioner. (Dkt. 1).

## B. Non–Medical Evidence

Plaintiff was born on August 1, 1957, and was 53 years old at the time of the administrative hearing. (Tr. 102, 198). Plaintiff has a high school education and speaks English. (Tr. 103). He was previously employed as a sales associate and car parts manager. (Tr. 117–18).

### 1. Plaintiff's Testimony

Plaintiff testified that he had applied for salesman, lawn maintenance, and building maintenance positions but that, after speaking with his attorney, he felt he could not perform a full time job. (Tr. 104–05). He indicated that his greatest concern was his blood sugar lows and highs that could take one and a half to two hours to stabilize. (Tr. 105). Plaintiff stated that as of the date of the hearing, he had two incidents of blood sugar lows in the fourteen day period since his last insulin pump adjustment. (Tr. 106). According to Plaintiff, when he is experiencing one of these lows, "I get stupid; act like I'm drunk, belligerent." (Id.).

Plaintiff testified that the insulin pump had somewhat improved his condition as far as stabilizing his blood sugar, but that he still experienced significant difficulty with memory loss. (Tr. 107).

According to Plaintiff, on a typical day, he would work in the yard, ride along with his step-daughter at her beef farm, or watch television. (Tr. 109). Plaintiff claimed that increased physical activity, such as sports or using the push lawn mower, could bring on a low. (Tr. 111).

### 2. Testimony of Deborah Greek, Plaintiff's Wife

Deborah Greek, Plaintiffs wife, testified that Plaintiffs diabetes was uncontrolled. (Tr. 113). Mrs. Greek indicated that Plaintiff had been to the emergency room two or three times for his diabetes. (Tr. 114). Mrs. Greek stated that his family has had to learn how to feed him and treat him in order to stabilize his glucose levels. (Id.). According to Mrs. Greek, physical activity could negatively impact Plaintiff's sugar levels. (Tr. 116). Mrs. Greek stated that Plaintiff was "like a belligerent drunk" when he experienced a sugar low, and that he was "more apt to be sitting and sleeping" when he was experiencing a sugar high. (Tr. 114).

### 3. Affidavit Testimony of David Fox, Plaintiffs Brother–in–Law

David Fox, Plaintiff's brother-in-law, testified by affidavit dated January 25, 2010, that Plaintiff had trouble remember-

ing things, and that Plaintiff could not work. (Tr. 362–64). Mr. Fox stated that he had witnessed Plaintiff "bottom out" at his house on at least three occasions in September 2008, and once in 2009. (Tr. 362). Additionally, Mr. Fox noted that Plaintiff would look "done in" after mowing his lawn. (Tr. 363).

### 4. Affidavit Testimony of Mary King, Plaintiff's Step–Daughter

Mary King, Plaintiff's step-daughter, testified by affidavit dated February 8, 2010, that Plaintiff was unable to work because he could not remember things. (Tr. 369). Ms. King stated that when Plaintiff had a low sugar level, he would slur his words and forget what he was doing. (Id.). Ms. King stated that Plaintiff was not who he used to be. (Id.).

### 5. Testimony of the Vocational Expert

The ALJ presented VE Victor Alberigi with a hypothetical question. (Tr. 117–20). The VE was asked to consider someone of Plaintiff's age, education, and experience who could perform work at the medium exertional level and who could perform simple, routine, repetitive tasks. (Tr. 118). The VE responded that the hypothetical individual could not perform Plaintiff's past work as a lawn mower salesman or parts manager, but he could perform the representative jobs of janitor, light cleaner and/or cleaner, charge account clerk, or dishwasher. (Tr. 119–20).

The ALJ posed a second hypothetical to the VE placing an additional limitation of the individual being off-task for at least two hours per day due to the effects of impairments outside of normal breaks. (Tr. 120). The VE responded that such an individual would be unable to perform work existing in the national economy. (Id.).

Plaintiff's attorney also asked the VE to consider a hypothetical individual ˋ who would miss four or more days of work per month, or who would be off-task up to two hours per day at unpredictable times for at least eleven times within a two week period. (Id.). The VE responded that, in either scenario, such an individual would be unable to perform work existing in the national economy. (Id.).

### C. Summary of the Medical Evidence

The Court assumes the parties' familiarity with the medical record, which is summarized below.

Plaintiff was first diagnosed with diabetes mellitus in September of 1998. (Tr. 30–31). Plaintiff was hospitalized on January 12, 2001, for improper use of insulin. (Tr. 77–78). On February 6, 2007, Plaintiff began treatment with Dr. Shahana Arshad. (Tr. 301). Dr. Arshad noted on April 29, 2008, that Plaintiff experienced inconsistent blood sugar levels, but did not have retinopathy or neuropathy. (Tr. 295). On April 29, 2009, Plaintiff followed up with Dr. Arshad, denying any neuropathic pain, and indicating that an eye examination in March 2009, showed that his vision was normal. (Tr. 290).

On July 17, 2009, Plaintiff was treated by Dr. Renee Wheeler at the Rushville Health Clinic. (Tr. 276). Dr. Wheeler noted a history of memory loss and Plaintiff's termination from employment on June 16, 2009. (Id.). Dr. Wheeler diagnosed Plaintiff with brittle diabetes accompanied by episodes of memory loss, forgetfulness, and hypoglycemia. (Id.). Dr. Wheeler stated that "patient is disabled due to brittle diabetes." (Id.).

On August 18, 2009, Plaintiff returned to Dr. Arshad, who noted that Plaintiff's blood sugar was low, and that Plaintiff had experienced three episodes of hypoglycemia in the previous month. (Tr. 288). Plaintiff reported increased forgetfulness and that he had recently lost his job. (Id.). Plain-

tiff also indicated that at his most recent ophthalmologist appointment he had myopia but not retinopathy. (*Id.*). Dr. Arshad indicated that Plaintiff's "blood sugar control is always suboptimal" and instructed Plaintiff to begin use of an insulin pump. (*Id.*).

Consultative examiner Dr. Sirotenko evaluated Plaintiff on September 17, 2009. (Tr. 318). Dr. Sirotenko concluded that Plaintiff had labile diabetes, but did not demonstrate evidence of retinopathy or neuropathy. (*Id.*). Dr. Sirotenko noted that Plaintiff had memory impairment, and opined that Plaintiff would have difficulty working in situations where he had to process new or multistep information. (Tr. 321). Plaintiff reported that he took care of his personal needs, watched television, and enjoyed hunting and fishing. (Tr. 319).

At a follow up appointment with Dr. Arshad on October 20, 2009, the doctor noted that Plaintiff had been placed on an insulin pump on October 13, 2009. (Tr. 340).

On October 12, 2009, consultative examiner Kavintha Finnity, Ph.D., performed a psychiatric evaluation on Plaintiff. (Tr. 342–45). Plaintiff reported that he lived with his wife and socialized with friends. (Tr. 342–43). He took care of his personal needs, shopped, did laundry, managed money, and drove. (Tr. 344). Plaintiff indicated that he spent his days watching television, reading, and doing yard work. (*Id.*). Plaintiff complained of episodes of daily frequent short term memory loss. (Tr. 342). Dr. Finnity concluded that Plaintiff did not have a psychiatric problem and had a good prognosis. (Tr. 344). On examination, Plaintiff's memory skills were intact; he could recall 3 out of 3 objects immediately and 3 out of 3 objects after five minutes. (Tr. 343). Plaintiff could recall six digits forward and 4 digits

backward. (*Id.*). Dr. Finnity noted that Plaintiff could follow and understand simple directions and perform simple tasks, and that he could learn and perform new and complex tasks. (Tr. 344).

In October 2009, Dr. M. Apacible, State agency psychiatric consultant, reviewed the evidence of record and determined that Plaintiff did not have a medically determinable impairment. (Tr. 325).

On November 11, 2009, Plaintiff returned to Dr. Wheeler, who noted that Plaintiff continued to complain of daily episodes of short term memory loss. (Tr. 347). Plaintiff's pump indicated that he had two hypoglycemic episodes since being placed on the pump, and the pump levels were adjusted. (*Id.*).

Dr. Arshad treated Plaintiff on January 21, 2010, and noted that Plaintiff had "type I diabetes with brittle control." (Tr. 374). Adjustments were made to Plaintiff's pump after a reading showed that Plaintiff had elevated glucose levels. (*Id.*). Dr. Arshad noted that Plaintiff did not have any retinopathy. (*Id.*).

Plaintiff repeatedly visited the insulin pump evaluator at Clifton Springs Hospital in May 2010 through September 2010 for pump adjustments due to poor control. (Tr. 382–87).

On July 22, 2010, Plaintiff told Dr. Arshad that he was feeling well, but blood testing showed that Plaintiff had elevated glucose levels. (Tr. 399).

On August 19, 2010, Dr. Wheeler opined that Plaintiff was "100% disabled due to brittle diabetes, memory loss and periods of confusion" and would likely miss more than four days of work per month due to his limitations. (Tr. 378–79).

On October 26, 2010, Dr. Arshad completed a "Brittle Diabetes Mellitus Form" and indicated that Plaintiff suffers from

diabetes mellitus, type I, that is complicated by "wide unpredictable fluctuations of blood glucose values." (Tr. 411). Dr. Arshad noted that Plaintiff suffers symptoms of dizziness, difficulty speaking, lightheadedness, weakness, blurred vision, nervousness, sleepiness, memory loss, fatigue, sweating, confusion, and urinary frequency in connection to his high and low glucose levels. (*Id.*). Dr. Arshad opined that Plaintiff would need to take a break for one and a half to two hours to stabilize following an episode of high or low glucose levels. (Tr. 412).

## III. DISCUSSION

### A. Standard of Review

■ This Court has jurisdiction to review the final decision of the Commissioner under 42 U.S.C. §§ 405(g) and 1383(c)(3). "In reviewing a decision of the Commissioner, the Court may 'enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner ... with or without remanding the cause for a rehearing.'" *Emerson v. Comm'r of Soc. Sec.*, No. 12 Civ. 6451(PAC)(SN), 2014 WL 1265918, at *9 (S.D.N.Y. Mar. 27, 2014) (quoting 42 U.S.C. § 405(g)). 42 U.S.C. § 405(g) directs the Court to accept findings of fact made by the Commissioner, so long as the findings are supported by substantial evidence in the record. Substantial evidence is "more than a mere scintilla," and "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to

have [his] disability determination made according to the correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir.1987).

■ Therefore, the scope of the Court's review is limited to determining whether the Commissioner applied the appropriate legal standards in evaluating the plaintiff's claim, and whether the Commissioner's findings were supported by substantial evidence in the record. *See Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir.1983) (stating that a reviewing Court does not examine a benefits case *de novo* ). If the Court finds no legal error, and that there is substantial evidence for the Commissioner's determination, the decision must be upheld, even if there is also Substantial evidence for the plaintiff's position. *See Perez v. Chater*, 77 F.3d 41, 46 (2d Cir.1996).

■ Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir.1988).

### B. Determining Disability Under the Social Security Act

The Social Security Act provides that a claimant will be deemed to be disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see Rembert v. Colvin*, No. 13–CV–638A, 2014 WL 950141, at *6 (W.D.N.Y. Mar. 11, 2014). A disabling impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostics techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). The burden is on the claimant to demonstrate that he is disabled within the meaning of the Act. *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir.2002). The individual will only be declared disabled if his impairment is of such severity that he is unable to do his previous work and cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful activity. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In making the disability determination, the ALJ follows a five-step sequential analysis. If the ALJ makes a determination at any step, the evaluation will not continue to the next step. 20 C.F.R. § 416.920(a)(4). The following five steps are followed:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.

*Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir.2000); *see* 20 C.F.R. §§ 404.1520, 416.920.

Here, in applying the five-step sequential analysis at the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity for the relevant time period. (Tr. 13). At the second step, the ALJ determined that Plaintiff's diabetes with short-term memory loss was a severe impairment. (*Id.*). At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment—specifically Listing 9.08—of 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13–14). The ALJ determined that Plaintiff had the residual functional capacity to perform medium work with a limitation to simple, routine, and repetitive tasks. (Tr. 14). Accordingly, at the fourth step, the ALJ found that Plaintiff could not perform his past relevant work in the skilled positions of hardware salesman or parts manager. (Tr. 16).

The ALJ then proceeded to the fifth step, which is comprised of two parts. First, the ALJ assessed Plaintiff's job qualifications by considering his physical ability, age, and education. (Tr. 16–17). At the time the application was filed, Plaintiff was 51 years old, had a high school education, and could not perform his past work. (Tr. 16). Second, the ALJ considered whether there were jobs exist-

ing in the national economy that a person with Plaintiff's qualifications and RFC could perform. (Tr. 17). The ALJ found that Plaintiff's ability to perform all or substantially all of the requirements of a medium level of work was impeded by additional limitations. (*Id.*). The ALJ posed hypothetical questions to the VE concerning an individual with Plaintiff's age, education, work experience, and RFC to determine if there were jobs in the national economy in significant numbers that Plaintiff could perform. (*Id.*). Relying on the VE's testimony, the ALJ determined that Plaintiff could perform jobs existing in the national economy, including the representative job of kitchen helper/dishwasher. (*Id.*). In light of these findings, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. 18).

## C. The ALJ did not err in finding that Plaintiff did not suffer from a severe impairment of "brittle diabetes."

■ Plaintiff argues that the ALJ erred by failing to find that Plaintiff was specifically suffering from "brittle diabetes," a condition noted by Dr. Wheeler and Dr. Arshad in their treatment notes. (Dkt. 5–2 at 13; Tr. 276, 374). According to Plaintiff, brittle diabetes is a more severe form of diabetes that causes unpredictable highs and lows in blood sugars. (Dkt. 5–2 at 13).

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment—specifically Listing 9.08—of 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Dkt. 1 at 10). He reached this conclusion because Plaintiff's medical records did not document the specific impairments required to satisfy the listing-level diabetes mellitus diagnosis. (*Id.*). "Listing section 9.08 requires a di-

agnosis of diabetes mellitus with A) neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station; B) acidosis occurring at least on the average of once every 2 months documented by appropriate blood chemical tests; or C) retinitis proliferans." (Tr. 13–14); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 9.08; *see Farnham v. Astrue*, 832 F.Supp.2d 243, 262 (W.D.N.Y.2011) (stating the criteria required to satisfy Listing § 9.08).

As the ALJ noted, the record did not include evidence that Plaintiff suffered acidosis at a level sufficient to satisfy listing 9.08B, (Tr. 14). Further, Plaintiff does not experience neuropathic pain in his feet, and does not have retinopathy. (*Id.*). During his September 2009 consultative examination, Dr. Sirotenko reported that Plaintiff showed "no evidence of diabetic retinopathy or neuropathy" and that Plaintiff's examination was "within normal limits." (Tr. 318). In a January 2010 appointment with Dr. Arshad, Plaintiff did "not have any retinopathy." (Tr. 374). Accordingly, the ALJ correctly concluded that Plaintiff does not meet or equal a listed impairment.

Despite Plaintiffs allegations that brittle diabetes leads to more severe impairments, Plaintiff failed to establish that his diabetes impairments were of a listing-level severity. Accordingly, the ALJ did not err in determining that Plaintiff did not have a listing-level impairment at step two of the sequential analysis.

## D. The ALJ's misinterpretation of Dr. Wheeler's opinion is harmless error.

■ Plaintiff argues that the ALJ committed reversible error when he rejected Dr. Wheeler's opinion. (Dkt. 5–2 at 16).

In assigning Dr. Wheeler's opinion "little weight," the ALJ stated: "she does not explain how the claimant's memory loss and intermittent confusion would prohibit the claimant from performing any type of postural activity (balancing, stooping, etc.)." (Tr. 16). The ALJ then noted that Plaintiff testified that he was able to do some physical activity, and that consultative examinations identified no physical limitations. (Tr. 16).

Plaintiff correctly notes that the ALJ misread Dr. Wheeler's opinion. Contrary to the ALJ's assertion, Dr. Wheeler did not form an opinion as to Plaintiff's postural limitations. (Tr. 377–78). Rather, the doctor indicated "N/A" in response to all of the questions concerning specific physical limitations. (*Id.*). Dr. Wheeler based her opinion on Plaintiff's mental state alone. (*Id.*). In addition, Plaintiff does not allege physical limitations, but merely alleges that he must take breaks from physical activity when he experiences changes in his glucose levels. (Dkt. 5–2 at 16).

Despite the fact that the ALJ incorrectly read the form completed by Dr. Wheeler and conducted his analysis of the opinion in light of his erroneous interpretation of the opinion, any error was harmless. Even if the ALJ had accurately interpreted Dr. Wheeler's opinion and assigned the opinion controlling weight, consideration of the report would not have changed the ALJ's final determination.

If the ALJ gave Dr. Wheeler's opinion controlling weight, the ALJ would not rely on the doctor's conclusion that Plaintiff was 100% disabled. Only the Commissioner can make a determination as to whether or not a person is disabled within the meaning of the Act. *See* 20 C.F.R. § 416.927(e)(1)-(3). Aside from Dr. Wheeler's conclusion that Plaintiff is totally disabled, Dr. Wheeler opines that Plaintiff has good and bad days and would miss more than four days per month of work as a result of his impairments. (Tr. 378). These limitations are considered elsewhere in the record and are identified by the ALJ in his decision. (Tr. 15). As a result, this evaluation does not provide any additional information that would have impacted the outcome of the ALJ's decision and the ALJ's misinterpretation of Dr. Wheeler's evaluation is harmless error. *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (finding harmless error where the ALJ's consideration of a doctor's report would not have changed the ALJ's adverse determination); *Walzer v. Chater*, No. 93 Civ. 6240(LAK), 1995 WL 791963, at *9 (S.D.N.Y. Sept. 26, 1995) (finding the ALJ's failure to discuss the treating physician's report was "harmless error, since his written consideration of [the] report would not have changed the outcome of the ALJ's decision.").

### E. The ALJ properly considered Dr. Sirotenko's opinion.

Plaintiff also argues that the ALJ improperly adopted the opinion of examining physician Dr. Sirotenko over the opinion of Dr. Wheeler, Plaintiff's treating physician. (Dkt. 5–2 at 17).

"[W]hen there are conflicting opinions between the treating and consulting sources, the 'consulting physician's opinions or report should be given limited weight.'" *Harris v. Astrue*, No. 07–CV–4554 (NGG), 2009 WL 2386039, at *14 (E.D.N.Y. July 31, 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir.1990)). However, an examining physician's opinion may constitute substantial evidence to support an ALJ's decision, provided the opinion is supported by evidence in the record. *See Diaz v. Shalala*, 59 F.3d 307, 313 n. 5 (2d Cir.1995); *see also Smith v. Colvin*, No. 12–CV–1169–JTC, 17 F.Supp.3d 260, 268, 2014 WL 1746054, at *7 (W.D.N.Y.

May 1, 2014) ("[T]he opinions of consulting sources 'may constitute substantial evidence if they are consistent with the record as a whole.'") (quoting *Barringer v. Comm'r of Soc. Sec.,* 358 F.Supp.2d 67, 79 (N.D.N.Y.2005)). "This is particularly so where the consultant directly examines the applicant." *Smith,* 17 F.Supp.3d at 268, 2014 WL 1746054, at *7 (citing 20 C.F.R. § 416.927(c)(1)) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.").

■ Here, Dr. Sirotenko directly examined Plaintiff, and his opinion is supported by medical evidence in the record. For example, Dr. Sirotenko opined that Plaintiffs physical examination was within normal limits, but that Plaintiff would have "significant difficulty" working in complex situations. (Tr. 321). The medical evidence shows that, on examination, Plaintiff had sugar highs and lows, but did not experience physical limitations. (Tr. 315–317). In addition, Plaintiff has not alleged any physical limitations. Further, the medical evidence and Plaintiff's testimony supports Dr. Sirotenko's opinion that Plaintiff's short-term memory may impact his ability to complete complex tasks. (Tr. 276, 288). Cognitive testing showed that Plaintiff was able to recall three out of three objects immediately and three out of three objects after five minutes. (Tr. 343). Testing also showed that Plaintiff was able to recall six digits forward and four digits backward. (*Id.*). This evidence supports Dr. Sirotenko's finding that Plaintiff was limited to simple, rather than complex, tasks.

In formulating his RFC with regard to Plaintiff's mental limitations, the ALJ pointed to Dr. Sirotenko's opinion that Plaintiff's short-term memory loss would cause "significant difficulty working in sit-uations in which he has to process new or multistep information." (Tr. 15). Thereafter, the ALJ limited Plaintiff's RFC to simple, routine, and repetitive tasks, despite the fact that Dr. Finnity opined that Plaintiff could "learn new tasks and perform complex tasks." (*Id.*).

The ALJ also noted that Plaintiff's diabetes was largely under control and monitored by his insulin pump, which helped to regulate the sugar highs and lows that Plaintiff alleged were so disabling. (*Id.*).

In addition, Plaintiff testified that he was searching for work and was able to engage in a number of daily activities, undermining Plaintiff's testimony that he was totally disabled. (Tr. 106, 109).

In light of the above, the ALJ did not err in evaluating the medical evidence in the record, and his RFC is supported by substantial evidence.

### F. The ALJ properly assessed Plaintiff's credibility.

Plaintiff alleges that the ALJ improperly based his rejection of Plaintiff's testimony on Plaintiff's past criminal history. (Dkt. 5–2 at 19). At the hearing, Plaintiff testified that he lost his prior job after being accused when a cash register was short. (Tr. 103–04). Plaintiff claimed that he had no memory of the sale, transaction, or having taken any cash from the business. (*Id.*). The ALJ also noted that Plaintiff was fired from a position in 1995 for grand larceny and served 18 months in jail related to that crime. (Tr. 16, 343). Based on that information, the ALJ noted that he found it "stretches credulity to accept that the claimant was fired for theft on two separate occasions due to short-term memory problems stemming from his diabetic condition." (Tr. 16).

Plaintiff maintains that his criminal history has no bearing on the credibility of

his alleged symptoms, and that the ALJ should have asked about the circumstances surrounding his termination. (Dkt. 5–2 at 20). Further, Plaintiff alleges that the ALJ failed to conduct a proper credibility analysis in accordance with the applicable Social Security regulations. (*Id.*).

■ First, the ALJ could consider Plaintiff's criminal history in evaluating Plaintiff's credibility. *See Williams v. Comm'r of Soc. Sec.*, 423 F.Supp.2d 77, 84 (W.D.N.Y.2006) (finding the ALJ's reliance on the claimant's testimony that she had possibly engaged in the criminal behavior of tax evasion to be within the ALJ's discretion); *Arrington v. Astrue*, No. 09–CV–870 A(F), 2011 WL 3844172, at *13 (W.D.N.Y. Aug. 8, 2011) (stating the ALJ was permitted to consider the plaintiff's history of bank robbery and substance abuse in determining the plaintiff's credibility). The ALJ may not rely solely on Plaintiff's criminal history to find the Plaintiff incredible. *Williams*, 423 F.Supp.2d at 84. Here, the ALJ considered Plaintiff's criminal history as one of many factors in conducting his credibility analysis. (Tr. 15–16). In addition, Plaintiff explained during his hearing testimony that he did not remember taking money from his employer and that at the time he allegedly took the money he was experiencing a fluctuation in his sugar levels. (Tr. 103–04). Plaintiff did describe the circumstances surrounding his termination. (*Id.*).

■ Second, the ALJ did not err in applying the credibility analysis set forth in the regulations.

The Social Security regulations require a two-step process for the ALJ to consider the extent to which subjective evidence of symptoms can reasonably be accepted as consistent with the medical and other objective evidence. *Brownell v. Comm'r of Soc. Sec.*, No. 1:05–CV–0588 (NPM/VEB), 2009 WL 5214948, at *3 (N.D.N.Y. Dec. 28, 2009). First, the ALJ considers whether the medical evidence shows any impairment "which could reasonably be expected to produce the pain or other symptoms alleged...." 20 C.F.R. § 404.1529(a). Second, if an impairment is shown, the ALJ must evaluate the "intensity, persistence, or functionally limiting effects" of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. § 404.1529(b). When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the credibility of the claimant's statements considering the details of the case record as a whole. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

Here, in considering Plaintiff's credibility, the ALJ properly applied the two step analysis. First, the ALJ determined that, "[a]fter careful consideration of the evidence ... the claimant[']s medically determinable impairment could reasonably be expected to cause the alleged symptoms...." (Tr. 15). However, the ALJ determined at the second step that the objective medical evidence did not substantiate Plaintiff's alleged symptoms. (*Id.*). Further, the ALJ found that Plaintiff's statements were not fully credible because the medical record did not show that Plaintiff's condition was as serious as Plaintiff alleged. (Tr. 15–16).

The ALJ noted Plaintiff's reports of short term memory loss as well as Plaintiff's claim that he would experience sugar highs and lows that could take up to two hours to normalize. (Tr. 14–15). However, the ALJ found that Plaintiff's statements were contradicted by medical evidence in the record. For example, although Dr. Arshad noted that Plaintiff had "one low blood sugar" that required treatment, it was on a "nonemergent basis," and no other hospitalizations for dia-

betes complications were noted in the record. (Tr. 15; Tr. 374). The ALJ recognized that Dr. Sirotenko opined that Plaintiff's memory loss would cause Plaintiff "significant difficulty working in situations in which he has to process new or multistep information" and accordingly limited Plaintiff's RFC to simple, routine, and repetitive tasks. (Tr. 15; Tr. 321).

 "'It is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of the witnesses, including the claimant.'" *Aponte v. Sec'y, Dep't Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir.1984) (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir.1983)). "The ALJ 'has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment ... [which he must do] in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant.'" *King v. Astrue*, No. 12–CV–6186T, 2013 WL 3154129, at *8 (W.D.N.Y. June 21, 2013) (quoting *Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir.1984)) (alteration in original). "If 'after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, the ALJ decides to discredit plaintiff's claim of severe and disabling pain, that' decision is supported by substantial evidence;'" *Drennen v. Astrue*, No. 10–CV–6007MAT, 2012 WL 42496, at *6 (W.D.N.Y. Jan. 9, 2012) (quoting *Pascariello v. Heckler*, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)).

Plaintiff's own testimony, in combination with the medical evidence, undermines Plaintiff's credibility as to the severity of symptoms alleged. Therefore, the ALJ did not err in finding Plaintiff's testimony to be less credible. "Because the ALJ's credibility analysis and factual findings are based on application of the proper legal principles, the Court may not examine the evidence and substitute its own judgment for that of the Commissioner." *Williams*, 423 F.Supp.2d at 84.

**G. The Appeals Council properly considered the opinion of Plaintiff's treating physician, Dr. Arshad, on review.**

 Plaintiff argues that the Appeals Council committed reversible error in failing to consider and evaluate the October 26, 2010, opinion of Dr. Arshad that was submitted to the Council on appeal. (Dkt. 5–2 at 14, Tr. 411–13).

In his report, Dr. Arshad opined that Plaintiff suffered from brittle diabetes, which resulted in unpredictable fluctuations in blood sugar as a result of physical activity and stress. (Tr. 411–13). Dr. Arshad noted that Plaintiff would require a break from any work activity for one and a half to two hours to recover from one of these fluctuations. (*Id.*). Plaintiff argues that adoption of this report by the Appeals Council would have led to a finding that there were no jobs in the national economy for Plaintiff to perform, in accordance with the VE's testimony. (Dkt. 5–2 at 14). The VE stated that an individual who would miss four days of work per month or who would be off-task up to two hours per day at unpredictable times for at least eleven times within a two week period would be unable to sustain work in the national economy. (Tr. 120).

Pursuant to 20 C.F.R. § 404.970(b):

If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or

before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

Plaintiff argues that Dr. Arshad's October 2010 report is new and material evidence, and that therefore the Appeals Council was required to consider it. (Dkt. 5–7 at 15).

Plaintiff contends that the opinion is material evidence because Dr. Arshad opined that Plaintiff's condition and limitations have been reasonably consistent and continuing since June 19, 2009, Plaintiff's alleged onset date. (Tr. 413). Additionally, Dr. Arshad began treating Plaintiff as early as 2007 through the relevant time period. (Dkt. 8 at 3; Tr. 301).

The Commissioner maintains that the Appeals Council properly rejected Dr. Arshad's opinion because, the Commissioner contends, the opinion did not offer any new or additional information. (Dkt. 7 at 8). In his decision, the ALJ noted Dr. Arshad's opinion that Plaintiff had extreme highs and lows in blood sugar levels. (Tr. 14–15). Further, the ALJ considered Plaintiff's testimony that he would require breaks of one and a half to two hours to recover form a sugar high or low. (Tr. 15). Because the assertions in Dr. Arshad's October 2010 report do not provide any new or material evidence, the Appeals Council did not err in rejecting the report.[2]

The Court has considered any additional arguments by Plaintiff and finds them to be without merit.

[2.] Plaintiff also argues that once the Appeals Council accepted Dr. Arshad's opinion as additional evidence, it was required to explain its reasons for dismissing the treating source's opinion in accordance with 20 C.F.R.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's determination that Plaintiff was not disabled within the meaning of the Social Security Act is supported by substantial evidence. Accordingly, the Commissioner's motion for judgment on the pleadings (Dkt. 4) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 5) is denied. Plaintiff's complaint is dismissed with prejudice.

SO ORDERED.

§ 404.1527(e)(3). (Dkt. 5–2 at 15). As the Appeals Council was not required to consider this duplicative evaluation, the Court need not address this argument.